IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PEIFER.** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 21–5432 |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA** | : | |
| **PENNSYLVANIA BOARD OF** | : | |
| **PROBATION AND PAROLE** | : | |
| *Defendant.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                                             **January 5, 2023**

Before the Court is Defendant's Motion for Summary Judgment against Plaintiff Samantha Peifer. ECF No. 20. Plaintiff's Amended Complaint (ECF No. 3) includes surviving claims of gender and pregnancy-based discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

I. BACKGROUND

Ms. Peifer brings this civil suit against her former employer the Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole (hereinafter "the Board of Probation and Parole") alleging disability, gender and pregnancy discrimination and retaliation. ECF No. 3. Ms. Peifer worked for the Board of Probation and Parole and was, at all times relevant to this matter, pregnant. According to Plaintiff, the Board of Probation and Parole is the Commonwealth's agency that oversees criminal offenders who have been given early release. ECF No. 3 ¶ 3. Ms. Peifer started in the role of Parole Agent I in or around January 2016 and was promoted to Parole Agent II in or around July 2016. *Id*. ¶¶ 24-25.

1

Plaintiff was diagnosed with Multiple Sclerosis ("MS") in or around September 2019. *Id.* ¶ 27. Plaintiff describes this ailment as substantially limiting her walking, breathing, and ability to perform manual labor. *Id.* ¶ 28. Ms. Peifer informed her supervisor, Joseph Bentzley, of her diagnosis of MS. *Id.* ¶ 29. The Board of Probation and Parole granted Ms. Peifer intermittent medical leave under the Family and Medical Leave Act ("FMLA") as an accommodation for her disability. *Id.* ¶ 30.

In or around March 2020, Ms. Peifer informed Mr. Bentzley, her direct supervisor, that she was pregnant with an expected due date in August 2020. *Id.* ¶ 31. Ms. Peifer also mentioned that she had a high-risk pregnancy due to her MS. *Id.* ¶ 32. Because of her disability and pregnancy, Ms. Peifer requested a modified duty assignment until the birth of her child. *Id.* ¶ 33. Plaintiff alleges that Mr. Bentzley initially denied her request because the Board of Probation and Parole does not provide accommodations for pregnancy. *Id.* ¶¶ 33-35. On March 15, 2020, Ms. Peifer again requested light duty and supplied Mr. Bentzley with documentation from her physician recommending light duty work. *Id.* ¶ 36. Ms. Peifer alleges that the following day she was denied accommodation by Michelle Rivera, the Eastern Regional Director. *Id.* ¶ 39. On March 25, 2020, Ms. Peifer requested light duty work for a third time with updated medical documentation. *Id.* ¶ 41. That same day, Ms. Rivera allegedly denied Plaintiff's request by email and called Plaintiff to "admonish[] her" for sending another request. *Id.* ¶¶ 43, 45. Ms. Peifer further alleges she was informed by both Michelle Rivera and Joseph Bentzley to stop working. *Id.* ¶¶ 46-47. Ms. Peifer claims she was then forced to take FMLA leave of absence. *Id.* ¶ 48.

Nearly one month later, Plaintiff filed a Charge of Discrimination with the EEOC alleging disability, sex and pregnancy discrimination and retaliation against the Board of Probation and Parole. *Id.* ¶ 51. Plaintiff alleges that her employer retaliated against her for the

EEOC Charge on or around May 18, 2020 by requiring her to work in the office full time and keep an inflexible schedule. *Id*. ¶ 54. Ms. Peifer claims she was the only person in her district forced to work solely in the office at that time. *Id*. ¶ 55, 59. Ms. Peifer also claims she was forced to use her personal vehicle instead of the state vehicle she used prior. *Id*. ¶ 56.

On May 28, 2020, Plaintiff requested an accommodation to work remotely or for the provision of personal protective equipment ("PPE") and gave Mr. Bentzley documentation from her physician in support of this request. *Id*. ¶ 57. Mr. Bentzley allegedly mocked Plaintiff in front of her coworkers for using PPE. *Id*. ¶ 58. Plaintiff further complained that her front desk assignment was retaliatory and that it put her health and her unborn child's health at risk. *Id*. ¶ 60. Plaintiff was later diagnosed with cholestasis of pregnancy, though it is unclear at what time Plaintiff became aware of this pregnancy complication or when her supervisor was notified of the condition. *Id*. ¶¶ 62-63.

Plaintiff then filed a second Charge of Discrimination with the EEOC on June 26, 2020. *Id*. ¶ 65. Ms. Peifer claims her requests for remote work continued to be denied while others who were not pregnant or disabled were able to work remotely or partially remote. *Id*. ¶ 68. On or around September 23, 2020, Ms. Peifer resigned from her position, alleging she was constructively discharged because of the Board of Probation and Parole's failure to address discriminatory and retaliatory conduct. *Id*. ¶ 69.

In their Motion for Summary Judgment (ECF No. 20) and attached Statement of Undisputed Material Facts (ECF No. 20-1), the Board of Probation and Parole asserts that Ms. Peifer was accommodated in accordance with her medical documentation and modified job responsibilities, and that Plaintiff voluntarily resigned. Plaintiff was employed as an Alcohol and Other Drugs agent in the Chester District Office since April 2018. ECF No. 20-1 ¶¶ 3-4.

At the outset, Defendant admits there was a delay in approval of modified light duty when Plaintiff requested accommodation in March 2020. ECF No. 20 at 5. Plaintiff sent a note from her physician to her supervisor Mr. Bentzley formally requesting light duty on March 15, 2020. ECF No. 20-1 ¶ 8. The following day, Defendant stated it could not "approve light duty as indicated within [Ms. Peifer's] medical documentation." *Id*. ¶ 9. Defendant instructed Plaintiff instead to contact the FMLA Coordinator. *Id*. On March 25, Plaintiff provided another physician's note to Defendant, identifying which of her current job duties she was able and unable to perform. *Id*. ¶ 10. Defendant similarly responded that modified light duty was unavailable for any non-work-related injury and Plaintiff must contact the FMLA Coordinator if unable to meet the essential functions of her position. *Id*. ¶ 11. Plaintiff subsequently used FMLA and annual leave around March 26, 2020. *Id*. ¶ 12.

However, Defendant did eventually grant Plaintiff a modified set of duties on May 14, 2020, which Ms. Peifer agreed to, even though it required work in the office. *Id*. ¶ 13. On May 13, 2020, Plaintiff emailed Defendant requesting further explanation for what accommodation would be provided and Defendant responded that they could accommodate her request for modified duty and Ms. Peifer should return to work on May 18. *Id*. Defendant also paid Ms. Peifer in full for the time she was placed on leave between the end of March and mid-May 2020 and restored both her annual and sick leave time. *Id*. ¶ 16

Thereafter, on May 28, Plaintiff provided an additional physician's note, requesting either work from home or PPE due to Ms. Peifer's pregnancy. *Id*. ¶ 17. The Board of Probation and Parole elected to provide PPE to accommodate Ms. Peifer's pregnancy because working at the front desk was her primary responsibility and work from home was not practicable. *Id*. The PPE included gloves, mask, and face shield. *Id*. On September 23, 2020, Ms. Peifer informed

4

Defendant that she was resigning in response to discriminatory treatment and considered herself constructively discharged. *Id*. ¶ 19.

## II. PROCEDURAL HISTORY

Plaintiff initiated this action on December 13, 2021. ECF No. 1. Ms. Peifer amended her complaint on February 16, 2022, which includes the following claims: (I) disability discrimination or failure to accommodate under the Americans with Disabilities Act of 1990 (the "ADA"); (II) disability discrimination or failure to accommodate under the Pennsylvania Human Relations Act; (III) gender and pregnancy discrimination under Title VII of the Civil Rights Act of 1964; (IV) gender and pregnancy discrimination under the Pennsylvania Human Relations Act; (V) retaliation under the ADA; (VI) retaliation under the Pregnancy Discrimination Act and Title VII of the Civil Rights Act of 1964; and (VII) retaliation under the Pennsylvania Human Relations Act. ECF No. 3.

The Board of Probation and Parole filed a partial motion to dismiss for lack of jurisdiction on April 26, 2022 (ECF No. 5), which Plaintiff admitted to by letter (ECF No. 7), and this Court granted (ECF No. 8). Following the Court's Order dated June 1, 2022, Plaintiff has two remaining claims: (III) gender and pregnancy discrimination under Title VII of the Civil Rights Act of 1964, and (VI) retaliation under the Pregnancy Discrimination Act and Title VII of the Civil Rights Act of 1964.

On November 7, 2022, Defendant filed this pending Motion for Summary Judgment. ECF No. 20. Plaintiff then filed her timely Response in Opposition. ECF No. 21.

## III. LEGAL STANDARD

Summary judgment is granted where the moving party has established "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A material fact is one that "might affect the outcome of the suit under governing law[.]" *Id.* at 248.

When deciding a motion for summary judgment, the Court considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). The judge's role is not to weigh the disputed evidence and determine the truth of the matter, or to make credibility determinations; rather the court must determine whether there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, in a case where the non-moving party is the plaintiff—who bears the burden of proof—the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

Ultimately, the question at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52.

**IV.   DISCUSSION**

"Title VII makes it unlawful for an employer to discharge or 'otherwise discriminate against any individual with respect to [her] compensation, terms, conditions or privileges of

employment because of such individual's race, color, religion, sex, or national origin.'" *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 677 (E.D. Pa. 2016), *clarified on denial of reconsideration,* 2016 WL 6135577 (E.D. Pa. Oct. 21, 2016), *aff'd,* 769 F. App'x 57 (3d Cir. 2019) (quoting 42 U.S.C. § 2000e–2(a)). Congress amended Title VII through the Pregnancy Discrimination Act, which includes within its protected classes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C.A. § 2000e(k).

In their Motion for Summary Judgment, Defendant contends, *inter alia*, that there is no direct evidence of gender or pregnancy-based discrimination and, accordingly, Ms. Peifer's claims should be evaluated under the three-step burden shifting inquiry from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). ECF No. 20 at 8. Based on the surviving allegations laid out in the Amended Complaint, there is no dispute that Ms. Peifer was not subject to gender-based commentary while employed at the Board of Probation and Parole. Ms. Peifer makes no assertions of any gender-related derogatory comments or language directed towards her or any other employee at the Board of Probation and Parole.[1] As there is no "overt or explicit evidence" showing gender discrimination, the Court agrees that the burden shifting inquiry is the appropriate test. *Samuel v. Target Realty, LLC*, 2021 WL 4774858, at *6 (E.D.Pa. Oct. 13, 2021) (internal citations omitted).

"The *McDonnell Douglas* framework requires that the plaintiff first establish a *prima facie* case of discrimination or retaliation. If the plaintiff successfully meets the requirements of a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions. If the employer produces such a reason, the burden then shifts back to the plaintiff to prove that the employer's nonretaliatory or nondiscriminatory

---

[1] While Plaintiff alleges her supervisor mocked her for wearing a face shield at work, that alone is not overt or direct evidence of gender or pregnancy discrimination. ECF No. 3 ¶ 58.

7

explanation is merely a pretext for the discrimination or retaliation." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–04). First, "[t]o establish a *prima facie* case of race or sex discrimination under either the federal or state statute, a plaintiff must first establish that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Id*. (citing *Jones v. Sch. Dist. Of Phila.*, 198 F.3d 430, 410–11 (3d Cir. 1999)).

There is no dispute that Ms. Peifer satisfies the first two prongs of establishing a *prima facie* case–she is biologically female and was pregnant during the relevant period and worked for the Board of Probation and Parole for a number of years prior to the allegations at issue in this case. The third prong of the inquiry is where Ms. Peifer fails to establish a genuine issue of material fact that she suffered an adverse employment action. An "adverse employment action," has been defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 518 (E.D. Pa. 2012). None of those actions were taken here by the Board of Probation and Parole. Even so, Ms. Peifer's proffered evidence does not sufficiently satisfy the fourth prong either of establishing an inference of unlawful discrimination.

Additionally, a plaintiff alleging that the denial of an accommodation constituted disparate treatment under the Pregnancy Discrimination Act may make out a *prima facie* case by showing that: (1) she belongs to the protected class, (2) she sought accommodation, (3) the employer did not accommodate her, and (4) the employer did accommodate others "similar in

8

their ability or inability to work." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 229 (2015). Plaintiff's claims similarly fall short here because Defendant did accommodate her based on her physician's instructions and there is no evidence Defendant treated Ms. Peifer differently than any others with similar limitations.

    A.  <u>Gender and Pregnancy Discrimination</u>

Ms. Peifer makes several allegations regarding the way Mr. Bentzley and Ms. Rivera managed her responsibilities, none of which constitute adverse employment actions. Starting in or around December 2019, Plaintiff was approved for intermittent medical leave under the Family and Medical Leave Act ("FMLA") to allow Ms. Peifer to manage her Multiple Sclerosis ("MS"). ECF No. 3 ¶¶ 27-30. Plaintiff makes no complaint about Mr. Bentzley or Ms. Rivera's accommodation of her MS. A few months later, Plaintiff takes issue with her employer's handling of her subsequent requests for accommodation due to her pregnancy during the first year of the Covid-19 pandemic.

Plaintiff informed Defendant that she had a high-risk pregnancy because of her MS, which required additional medical appointments and ultrasounds. ECF No. 3 ¶ 32. Though Ms. Peifer's initial informal requests were denied, once she submitted medical documentation formally to Defendant, Ms. Rivera replied that the company policy was to only allow modified/light duty for "work related injury" and that HR cannot approve the request. ECF No. 20-1 ¶¶ 8-9. Ms. Rivera then referred Plaintiff to the FMLA Coordinator because Plaintiff had recently been approved for intermittent medical leave. Just over a week later, Plaintiff provided another physician's note with a list of her current responsibilities, identifying which she could and could not perform. *Id*. ¶ 10. Ms. Rivera replied similarly that HR could not approve her request for modified/light duty without a work-related injury, referencing a policy that applies to

all employees equally, and again encouraging Plaintiff to reach out to the FMLA coordinator if Ms. Peifer cannot perform the essential functions of her job. *Id*. ¶ 11. By March 26, 2020, Ms. Peifer had elected to use her FMLA and annual leave. *Id*. ¶ 12.[2]

Approximately a month and a half from Ms. Peifer going on leave, Plaintiff emailed Defendant again requesting modified duty. *Id*. ¶ 13. This time, less than two months after Plaintiff's initial request, Mr. Bentzley offered to put Ms. Peifer on modified duty in accordance with the physician's note that Ms. Peifer attached to her email. *Id*. ¶ 13. Plaintiff was asked to come back to work on May 18, 2020. Defendant also paid Ms. Peifer in full for the time she was on leave and restored her leave time. *Id*. ¶ 16. While the Court can commiserate with Plaintiff's discontent in the delayed approval of modified duty, ultimately Defendant granted Plaintiff's request. There is no evidence, nor any assertion by Plaintiff, that going on leave for less than two months specifically was adverse to her employment. Like many employers at the start of the Covid-19 pandemic, the Board of Probation and Parole took a limited amount of time to alter its standing policy on modified duty and, not only approved Plaintiff's request in accordance with her physician's note, but Defendant also chose to pay Plaintiff in full for her brief leave and restore her leave for future use. There is no evidence and no inference here that Plaintiff was discriminated against by this delay, yet there is evidence of Defendant's accommodation. These circumstances show that Ms. Peifer received an exception to the policy due to the unforeseen circumstances of the Covid-19 pandemic, evidence of accommodation not discrimination.

---

[2] Plaintiff claims she was "forced" to take a leave of absence and believes she was being punished by the removal of her company-issued vehicle. ECF No. 3 ¶ 48. But Ms. Peifer herself submitted medical documentation showing she was unable to perform many functions of her job. In an effort to accommodate Ms. Peifer's disability, Defendant encouraged her to take medical leave. Plaintiff provides no evidence that similarly situated employees were treated differently. Plaintiff does not provide evidence that company vehicles are removed only for disciplinary action or that individuals on medical leave are generally permitted to keep work equipment. Even so, Plaintiff does not specify, for instance, that she required this equipment to perform her job once she returned to the office in May. Plaintiff has many grievances regarding the circumstances of her leave that do not rise to the level of an adverse employment action.

Upon returning to work, Ms. Peifer took issue with the requirement to work at the office full time and keep a strict 8:30 am to 5:00 pm schedule. ECF No. 3 ¶ 54. Ms. Peifer alleges, without evidence, this was related to her filing of a Charge of Discrimination with the EEOC a month prior, on or around April 21, 2020. *Id*. ¶¶ 51-52.[3] Ms. Peifer compares this schedule to her more flexible schedule prior to her pregnancy, though that fails to provide the Court with a comparison to similarly situated individuals and ignores her specific request for modified responsibilities, which necessitated a change in her role at the Board of Probation and Parole. For example, Ms. Peifer's physician indicated she was unable to forcibly disarm an offender. ECF No. 20-1 ¶ 30. Ms. Peifer contends that there are genuine issues of material fact as to whether she could perform the essential functions of her position. ECF No. 21-1 at 15. However, Ms. Peifer submitted documentation explicitly excluding certain functions of the role and there is consensus that at least some face-to-face contact with parolees was required, which Ms. Peifer's physician stated she could not perform. Since that integral function of her job could no longer be performed, Defendant altered Ms. Peifer's job responsibilities to fit within her medically defined capacities as determined by her own physician.

Due to the limitations specified in the physician's note, Mr. Bentzley compiled a list of duties Ms. Peifer could perform. ECF No. 20-1 ¶¶ 31-32. The "modified duty position description" and checklist prepared specifically for Ms. Peifer was provided to Plaintiff prior to her acceptance of this modified role and signed by Ms. Peifer, Mr. Bentzley, and Ms. Rivera. ECF No. 20-1 ¶ 14. This description informed Plaintiff in multiple places that her responsibilities on modified duty would be conducted in the office and outlined her work schedule. *Id*. ¶¶ 14-15. Ms. Peifer's primary function on modified duty was to cover the front desk. *Id*. ¶ 34. Since

---

[3] Plaintiff fails to allege that her supervisors were even aware of the Charges of Discrimination Ms. Peifer filed.

11

parole agents are required to work 40 hours per week and Ms. Peifer's primary role was to cover the front desk, naturally Plaintiff had to be at the office five days a week. *Id*. ¶ 37. Here, Defendant provided the modified duty that Plaintiff requested, in accordance with her physician's instructions, and laid out the responsibilities, which were mutually agreed upon by Plaintiff and her supervisors.

The following week, Plaintiff, still dissatisfied with her employer, sent in another physician's note, requesting *either* remote work *or* PPE in the form of a mask, face shield, and gloves. *Id*. ¶ 17. Defendant obliged by providing the requested mask, face shield, and gloves. *Id*. ¶ 18. While failing to provide high-risk individuals with PPE may be a cause for concern, there can be no inference that providing Ms. Peifer with PPE constitutes an adverse employment action.

It is apparent to the Court from the record that Plaintiff strongly *preferred* to work from home. ECF No. 21-1 at 13-14. Yet Defendant's refusal to satisfy Plaintiff's particular preference, which was not required by the medical documentation, is not evidence of an adverse employment action, nor is it evidence of discrimination. *See Stewart v. Union Cty. Bd. of Educ.*, 655 Fed. App'x. 151, 157 (3d Cir. 2016) (assignment to a "less prestigious" post was not an adverse employment action). Ms. Peifer fails to show that there is a causal connection between her responsibilities and her gender or pregnancy, other than to say generally that other employees did not receive the same treatment. The record shows otherwise. Ms. Peifer received permission for modified duty within two months of her formal request, an opportunity usually reserved for work-related injury, and given here as an exception due to the circumstances. While Plaintiff broadly asserts that other employees were allowed to work remotely, Defendant distinguishes those employees–they were not on modified duty and were not employed as Alcohol and Other

Drugs agents.[4] Ms. Peifer was the sole Alcohol and Other Drugs agent in the Chester office at the time. ECF No. 20-1 ¶ 27. Plaintiff admits this partially, referring to the "regular clerical staff" as working remotely, which is presumably not the same role as an agent. ECF No. 3 ¶ 59. Defendant also notes that within 18 months of Peifer's modified duty, three other employees were given modified duty that required the same full time presence in the office from 8:30 am to 5:00 pm (one chose to go on leave and the other two worked in the office). ECF No. 20-1 ¶¶ 41, 43-45, 46.

As frustrating as it may have been for Plaintiff to be asked to work in the office, while other employees who were not similarly situated adopted a more flexible schedule, Title VII does not guarantee an ideal working environment, merely an employer that does not discriminate based on protected classes. Therefore, the Court finds Ms. Peifer fails to provide sufficient evidence that she was discriminated against based on her gender or pregnancy. *Nardella v. Philadelphia Gas Works*, 997 F. Supp. 2d 286, 297 (E.D. Pa. 2014) ("At the summary judgment stage, speculation cannot sustain claims of discrimination.").

    B.  <u>Retaliation</u>

Ms. Peifer also brings a claim of retaliation pursuant to Title VII and the Pregnancy Discrimination Act. Once again, since there is no direct evidence of retaliation, the Court uses the burden-shifting framework in *McDonnell Douglas*.[5] "[A] plaintiff asserting a retaliation claim first must establish a prima facie case by showing (1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous

---

[4] Ms. Peifer highlights incomparable situations throughout her opposition to summary judgment. For example, Ms. Peifer refers to accommodations made to employees who did not feel comfortable transporting parolees in their vehicle. ECF No. 21-1 at 14. This accommodation is entirely unlike Ms. Peifer's request. It is also unclear whether these agents were Alcohol and Other Drugs agents.
[5] Retaliation claims in the Third Circuit follow the same *McDonnell-Douglas* burden-shifting framework used for discrimination claims. *See Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017).

with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (internal citations omitted). For the purposes of summary judgment, the Court will assume without analysis that Ms. Peifer's various requests for accommodation and EEOC Charges qualify as protected employee activity. As to the second prong, requiring adverse action in response to or during the protected activity, the Court "examine[s] the challenged conduct from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Daniels*, 776 F.3d at 195 (internal citations and marks omitted). "[P]laintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* "[M]inor annoyances and simple lack of good manners" is insufficient. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Defendant's alleged treatment of Ms. Peifer fall short of materially adverse to her employment. The Court detailed above how Ms. Peifer's factual assertions, and the evidence provided do not constitute discrimination. As for retaliation, none of Ms. Peifer's requests or complaints resulted in formal discipline. She was never demoted from her position, nor did she suffer a pay decrease. Other than Ms. Peifer's subjective speculation, there is no evidence showing Defendant had any nefarious motivation for collecting her work equipment, including vehicle, when Ms. Peifer went on leave and then failing to return it to her following her return to work. There is no evidence Ms. Peifer requested the vehicle when she returned to the office and that Defendant denied her request.

Ms. Peifer's claims that an inflexible, in-office schedule at the front desk constituted punishment fail to create a genuine issue of material fact. There is no evidence in the record, nor

any assertion from Ms. Peifer, that this assignment was beyond the scope of her job description or requirements. Other than the reality that Ms. Peifer was required to work in-person, as opposed to remotely, Plaintiff provides no indication that this role was a demotion or changed her salary or meaningful benefits in any way. Ms. Peifer is largely alleging that any accommodation short of complete remote work was retaliatory, though there is no evidence, aside from Ms. Peifer's anecdotal assertions, that assigning her to the front desk was unreasonable. Ms. Rivera is well-within her role as director and Mr. Bentzley as the direct supervisor to re-assign responsibilities amongst the parole agents, particularly since this assignment was made in response to Ms. Peifer's requests for modified light-duty work. The checklist of her responsibilities was derived specifically from the medical documentation Ms. Peifer provided. Ms. Peifer had the opportunity to review the job description, which plainly included front desk responsibilities at the office, and signed off on the role. Ms. Peifer makes no assertion in her Amended Complaint that she agreed to this arrangement under duress. After a few months of desk duty, Plaintiff may have felt buyer's remorse for agreeing to that arrangement, but that does not amount to retaliation.

     Ms. Peifer's allegations of desk duty as punishment also stands in contrast to the record. There is evidence that Defendant tried to accommodate her high-risk pregnancy in accordance with her physician's note by providing PPE and offering her a light-duty desk position at Ms. Peifer's request. There is evidence that other agents were similarly given a modified duty role covering the front desk full time around the same period as Ms. Peifer. Therefore, the Court cannot find Ms. Peifer's broad assertions rise to the level of an adverse employment action. While Ms. Peifer may be subjectively dissatisfied with her interactions with Mr. Bentzley and Ms. Rivera, that does not mean an adverse employment action occurred.

C. <u>Constructive Discharge</u>

Ms. Peifer claims that she was constructively discharged due to gender and pregnancy discrimination from the Board of Probation and Parole, specifically because of Mr. Bentzley and Ms. Rivera's refusal to permit Plaintiff to work remotely.

Employee resignations are presumed to be voluntary. *See Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999). "This presumption remains intact until the employee presents evidence to establish that the resignation […] was involuntarily procured." *Id*. "In evaluating constructive discharge claims, courts in this circuit apply an objective test to determine whether the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Nagle v. RMA, The Risk Mgmt. Ass'n*, 513 F. Supp. 2d 383, 392 (E.D. Pa. 2007) (internal citations and marks omitted). The question is not whether Ms. Peifer suffered from adverse actions but whether a reasonable person, when faced with these circumstances, would feel forced to resign. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996) (internal citation and marks omitted).

"Courts consider a number of factors in determining whether an employee was forced to resign, including whether (1) she was threatened with discharge; (2) she was encouraged to resign; (3) she was demoted or suffered a reduction in pay or benefits; (4) she was involuntarily transferred to a less desirable position; (5) her job responsibilities were altered; and (6) she began receiving unsatisfactory job evaluations." *Seeney v. Elwyn, Inc.*, 409 F. App'x 570, 573 (3d Cir. 2011).

Here, Plaintiff fails to show any of the factors indicating constructive discharge. Since Ms. Peifer returned to work in May 2020, there is no allegation that Defendant threatened to terminate her employment. Earlier in the spring, Ms. Rivera encouraged Ms. Peifer to take a

16

leave of absence, but aside from an alleged stray comment that Ms. Peifer should stop working to go on leave, there is no indication that resignation or termination was ever mentioned by Ms. Rivera or Mr. Bentzley. There is no evidence that Ms. Peifer considered desk duty to be a demotion or that her pay decreased. The only reduction in benefits mentioned by Ms. Peifer is the alleged revocation of her company vehicle, though that occurred prior to her filing of an EEOC Charge of Discrimination. There is also no evidence that Ms. Peifer inquired about the vehicle following her return from leave. Even so, removal of a company vehicle for an employee on leave and then being assigned to work in the office is not tantamount to forced resignation. Ms. Peifer was not involuntarily transferred to a less desirable position, though she expresses frequently how little she desired desk duty. The position was based on her medical documentation and agreed to by Ms. Peifer, who signed the description of the role in May 2020. Finally, there is no mention by either Plaintiff or Defendant of unsatisfactory job evaluations.

   The only possible claim Ms. Peifer could make relates to her job responsibilities being altered. However, Ms. Peifer requested and subsequently signed off on the alteration of her role which aligned with the very medical documentation she provided seeking modified responsibilities. To state it differently, the medical documentation permitted her to work the required hours performing the very tasks she was assigned to perform. Plaintiff's disappointment that she was not able to work remotely does not qualify as employment altering actions and not being permitted to work remotely is not a constructive discharge. A requirement of a position to be on site while working is not and cannot be constructive discharge. *See Nagle*, 513 F. Supp. 2d at 392 (quoting *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir.1992)) ("the employment discrimination laws do not 'guarantee[ ] a working environment free of stress.'"). In this case, Ms. Peifer subjectively determined that she no longer wanted to work in-person at the

Board of Probation and Parole but "the law of constructive discharge does not permit an employee's subjective perceptions to govern [the] claim." *Gray*, 957 F.2d at 1083 (internal citations and marks omitted); *Taylor v. Brandywine Sch. Dist.*, 202 F. App'x 570, 576 (3d Cir. 2006) ("These bare and unsubstantiated allegations are not sufficient to meet [plaintiff's] burden [to establish constructive discharge].").

Ultimately, this Court finds that Ms. Peifer's resignation was voluntary and not forced upon her by discrimination. There is no evidence that Ms. Peifer's resignation was forced due to her repeated requests for different accommodations, nor is there evidence of gender bias surrounding the events leading to her resignation. Based on the information presented in the record, no reasonable trier of fact could conclude that Ms. Peifer's work environment was so intolerable that she had no choice but to resign. Ms. Peifer was provided a desk job by her employer, which was consistent with what her doctor had ordered she be given. *See Tunis v. City of Newark*, 184 Fed. App'x 140, 143 (3d Cir. 2006) ("While the law protects employees from concerted, calculated efforts to expel them or the imposition of unduly harsh conditions not visited upon their co-worker in order to force them to quit, it does not guarantee that they will not suffer frustrations, challenges, disappointments and discipline").

D.  <u>Immaterial Facts</u>

Ms. Peifer's remaining alleged examples of discrimination or retaliation neither rise to the level of an adverse employment action nor do they give rise to an inference of unlawful discrimination. If it is true that Mr. Bentzley mocked Ms. Peifer's face shield, such obnoxious humor is a common workplace grievance that does not have any objective effect on Ms. Peifer's employment. In addition, Ms. Peifer briefly mentions that she developed a liver condition related to her pregnancy and her requests for remote work following that condition were ignored. ECF

18

No. 3 ¶¶ 62-64. This assertion, without more information or evidence, fails to present the Court with any genuine dispute of material fact. Based on the chronological order of Plaintiff's Amended Complaint, the Court deduces that this liver condition developed at some point in the summer of 2020. Plaintiff does not assert that she provided Defendant with medical documentation requiring remote work due to this condition. ECF No. 21-1 at 18. Plaintiff allegedly notified Mr. Bentzley that she needed weekly appointments to monitor her liver condition but fails to allege Mr. Bentzley refused to allow her to attend those appointments.

Furthermore, there must be an adverse employment action in response and an inference that Ms. Peifer was mistreated based on her gender or pregnancy. Neither exist here. Outside of a few general grievances and her own subjective perception of the circumstances (that working in the office was unfair), Ms. Peifer identifies no evidence that she was ever disciplined by her supervisors for requesting accommodation. There is no genuine issue of material fact regarding discrimination or retaliation as a consequence of Defendant's slow or reluctant responses during a challenging time for both employer and employee because there is no evidence that the Board of Probation and Parole treated Ms. Peifer any differently or in a manner that affected the terms or condition of her employment adversely following her requests.

## V.   CONCLUSION

The Court concludes that there is no genuine dispute of *material* fact with respect to any of Ms. Peifer's claims and that Defendant is entitled to judgment as a matter of law on each claim. Ms. Peifer failed to produce sufficient evidence such that a reasonable jury could rule in her favor. Therefore, the Court grants summary judgment in favor of Defendant on all counts.

**BY THE COURT:**

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**